OLD SOUTH SOCIETY *vs.* CITY OF BOSTON.

Suffolk.    March 13. — Sept. 4, 1879.    MORTON & ENDICOTT, JJ., absent,

In January 1873, a religious society leased for two years its meeting-house and the
land connected therewith to the United States for the use of the government,
having previously purchased another lot of land, upon which a church edifice
had been begun, and having made arrangements elsewhere for a temporary
place of worship in the mean time.  The pulpit, organ and pews were removed
from the meeting-house and were not replaced; and, since the lease, the build-
ing had not been in a condition, and no attempt had been made to put it in a
condition, suitable for a place of worship.  In 1874, on petition of the society,
it was authorized by statute to sell the meeting-house and land, and the society
afterwards endeavored to sell the same, upon conditions one of which was that
the premises should never be used as a place of public worship.  In May 1875, a
tax was assessed upon the premises, which was paid under protest.  *Held*, that
the property was not exempt from taxation under the Gen. Sts. *c.* 11, § 5, *cl.*.7.

CONTRACT to recover the amount of a tax assessed by the de-
fendant city upon the real estate of the plaintiff, on May 1, 1875,
and paid by the plaintiff under protest.   The case was submitted
to the judgment of this court upon an agreed statement of facts,
the substance of which appears in the opinion.

*L. M. Child*, for the plaintiff.

*C. F. Kittredge*, for the defendant.

AMES, J.   It was decided by this court, in *Lowell Meeting-
house* v. *Lowell*, 1 Met. 538, that the exemption of houses of

religious worship from taxation extended to that part of the property only which was used as a place of worship, and for purposes connected with it, such as the vestry, the furnace, and the like. And by the St. of 1841, *c.* 127, reënacted in the Gen. Sts. *c.* 11, § 5, it is provided that portions of such houses appropriated for purposes other than religious worship shall be taxed at the value thereof to the owners of the houses. And this court also decided, in the recent case of *Trinity Church* v. *Boston*, 118 Mass. 164, that the exemption given by the statute would apply to a lot of land, purchased by a religious society for the purpose of building a house of worship, not more than sufficient in extent to meet its reasonable requirements in this respect, and devoted by such society in good faith to the erection of a church edifice, upon which the work of erection had been begun and was prosecuted with no unreasonable delay, the lot being all the real estate which the society so held.

The proper inference to be drawn from the statutes and decisions upon the subject is, that the exemption from taxation depends entirely upon the use for which the building in question is intended, and is limited by such use. There must either be an actual occupation of it as a place of religious worship, or at the least a distinct and fixed intent to use it as such; otherwise, it is not a house of religious worship. An unfinished church edifice, in the process of construction, is exempt, and so also is a house of worship the use of which has been temporarily interrupted. The reason of the exemption in such cases is that, although the property is not actually in present use for purposes of religious worship, yet it is held in good faith for such uses and none other. It is plain that, on the first day of May 1875, the plaintiff's ownership and use of the building did not fulfil any condition which would entitle it to be exempt from taxation.

The plaintiff ceased to use the building as a place of public worship in December 1872, having previously purchased a lot of land in another part of the city, upon which to build a church edifice, chapel and parsonage for its own use, (all of which had been begun,) and having made arrangements elsewhere for temporary places of worship in the mean time. At the special session of the Legislature called on the occasion of the great fire in Boston, in November 1872, the plaintiff obtained authority

to "lease its meeting-house and the lot of land connected there-with . . . to the United States government, for the uses of the post-office, for such time as the said government may require." St. 1872, c. 368.   Under this authority, which was without any definite limitation of time, the building was leased to the United States government, and was occupied by its officers as a post-office, for the term of two years.   The pulpit, organ and pews were removed, and have never been replaced.   Since January 1, 1873, the date of the lease, the building has not been in a condition, and no attempt has been made to put it in a condition, suitable for a place of public worship.   In January 1874, the plaintiff petitioned the Legislature for leave to sell its meeting-house and the land under and adjoining the same, and by the St. of 1874, c. 270, it was provided that such sale might be made, if authorized by this court upon a suit in equity brought to obtain its sanction to a sale, lease, or other transfer.   A suit in equity was accordingly brought by this plaintiff for that purpose, and finally granted, with the result set forth in *Old South Society* v. *Crocker*, 119 Mass. 1.   We may well assume that all this legislation and litigation were promoted by this plaintiff for the purpose which it afterwards made efforts to carry into effect, viz. the sale of the property.   The agreed facts show that the plaintiff, from June 1874 until after the assessment of the tax, was seeking to sell the property in the general real-estate market, and that one of the proposed conditions of sale was that the premises should never be used as a place of public worship. It is difficult to see how the plaintiff could make any plainer manifestation of the intent, not only on its own part to abandon, but also to absolutely prevent, on the part of any other persons, its future use for the only purpose on which its exemption from taxation must depend.         *Judgment for the defendant.*