## Town of Swansea *vs.* Contributory Retirement Appeal Board & others.[1]

No. 96-P-630.

Bristol. May 8, 1997. - August 21, 1997.

Present: Dreben, Gillerman, & Greenberg, JJ.

*Contributory Retirement Appeal Board. Retirement. Public Employment,* Termination, Retirement. *Practice, Civil,* Relief in the nature of certiorari, Declaratory proceeding.

In the "special circumstances of public interest" presented, an action for declaratory relief (G. L. c. 231A) was the appropriate method for a town to seek review of a county retirement board's action in reinstating to his office a retired former town employee, after expiration of the time for the town to file an action in the nature of certiorari because the board erred in advising the town regarding its right to appeal, where the town acted reasonably in relying on the board's advice, where there was a risk of a miscarriage of justice in a matter involving the public interest, and where the decision of the board, inadequate on its face, had as yet evaded all administrative or judicial review. [406-407]

Civil action commenced in the Superior Court Department on June 20, 1995.

The case was heard by *Richard J. Chin,* J., on a motion for summary judgment.

*John C. Corrigan, Jr.,* for the plaintiff.

*Thomas A. Hickey, III,* for the Bristol County Retirement Board.

*Michael Holden* for Clinton Watkinson.

Gillerman, J. The plaintiff (town) appeals from the judgment entered in the Superior Court dismissing the town's complaint against the Contributory Retirement Appeal Board (CRAB), the

[1]Bristol County retirement board and Clinton Watkinson.

Bristol County retirement board (county board), and Clinton Watkinson.[2]

Many of the material facts are not in dispute. On July 16, 1987, the board of selectmen of the town notified Watkinson that it had unanimously voted to appoint him "Supervisor of Highway Services, your term to expire on June 30, 1990." At a meeting of the selectmen held May 22, 1990, the selectmen voted, two to one, "not to reappoint Clinton Watkinson as Supervisor of Highway Services." The minutes of the meeting of the selectmen record that Watkinson "called [the two select-men voting in favor of the motion] 'sickies' and [he] stated that 'the fight has just started.' "

On February 19, 1992, Watkinson requested in writing that the county board return all of his accumulated total deductions as a member of the retirement system. Above Watkinson's signature, the request states in part, "In consideration of such payments, all other rights and privileges to which I was entitled as a member of such Retirement System are hereby surrendered and I understand that upon such payment my membership in the Retirement System will terminate." On February 21, 1992, a check in the amount of $21,145.93 was delivered to Watkinson in response to his written request.

More than two years later, on May 4, 1994, Watkinson applied to the county board for relief under G. L. c. 32, § 16(2).[3] Among the issues identified by the county board to be addressed by the parties were (i) whether the removal of Watkinson's accumulated contributions following his dismissal barred him from seeking redress, (ii) whether Watkinson was removed or

---

[2]Watkinson had filed a motion for judgment on the pleadings or in the alternative, for summary judgment. The judge treated Watkinson's motion as one falling under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1979), and the parties, correctly, do not contest that procedure. See *Sampson* v. *Lynn*, 405 Mass. 29, 30 (1989). We note that the county board has filed a brief in this appeal, although it did not present a motion directed to dismissing the appeal against it. That point is of no consequence in view of the result we reach.

[3]Section 16(2), as appearing in St. 1982, c. 630, § 21, provides that "[t]he removal or discharge of any member . . . shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board. The procedure set forth in subdivision (1) relative to . . . notice, hearing if requested, and the filing of a certificate of findings and decision . . . shall apply to all proceedings involving such removal or discharge. Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation."

discharged rather than not being reappointed, and (iii) whether Watkinson's claim was barred by laches, election of remedies,[4] waiver, or estoppel.

On July 26, 1994, without any discussion of the issues it had identified as bearing on Watkinson's claim, the county board (after a hearing) simply concluded that Watkinson was a "member in service at the time of his removal or discharge and otherwise meets the statutory criteria of G. L. c. 32, § 16(2) . . . [and] that his removal or discharge was not effective, since the head of his department failed to comply with the statutory mandate to file a fair summary of the facts upon which his removal or discharge was based." See note 3, *supra.* Thereupon the county board reinstated Watkinson to the office of supervisor of highway services without loss of compensation. The record appendix does not include the transcript of the hearing before the county board, and the evidence upon which the county board based its decision is not before this court.[5]

The final paragraph of the decision of the county board states as follows: "Any party aggrieved by this decision may appeal pursuant to G. L. c. 30A and G. L. c. 32, § 16."[6] The county board evidently was unaware of the decision of the Supreme Judicial Court in *Barrett* v. *Police Commr. of Boston,* 347 Mass. 298, 300-301 (1964). *Barrett* held that where the subject of the controversy was the "removal or discharge" of a member, the police commissioner had no right of appeal under G. L. c. 32, § 16, because the "matter on which the [police commissioner] . . . purported to appeal was one subject to review by the district court . . . ." See G. L. c. 32, §§ 16(3) & 16(4), second

---

[4]This referred, no doubt, to a Federal action Watkinson brought in 1991 under 42 U.S.C. § 1983 (1994), which resulted, in 1996, in the allowance of the town's motion for summary judgment.

[5]The town states in its brief that the transcript of the county board hearing, which has been transcribed from a tape recording, was not part of the record either before CRAB or the Superior Court since "the County Board did not advise counsel for the Town of its existence until the day of the hearing in the Superior Court."

[6]The parties agree that at the conclusion of the hearing before the county board, counsel for the county board expressed his uncertainty as to "what the Town's remedy is . . . if the Board finds in favor of Mr. Watkinson." That uncertainty would seem to have been resolved when the county board subsequently issued its decision advising the parties regarding their rights of appeal, as stated in the text.

par.[7] See also *Bagley* v. *Contributory Retirement Appeal Bd.*, 397 Mass. 255, 257 (1986). Since the county board found that Watkinson had been removed or discharged, and therefore Watkinson could have brought a petition in the district court in the event of an unfavorable decision by the county board, see note 7, *supra*, the advice of the county board that Swansea could proceed under § 16 was plainly mistaken.[8] See *Georgetown* v. *Essex County Retirement Bd.*, 29 Mass. App. Ct. 272, 273 (1990) (indicating that when c. 32, § 16, is not available, the proper method of judicial review is an action in the nature of certiorari [G. L. c. 249, § 4] in the Superior Court).

Counsel for the town took the advice of the county board,[9] and on August 5, 1994, filed a claim of appeal with CRAB. Adopting the order of dismissal of the town's appeal issued by the administrative magistrate on the authority of *Barrett, supra*, CRAB correctly concluded that it had no jurisdiction to hear the town's appeal because Watkinson had obtained a hearing before the county board under § 16(1) and (2) — making the "matter" one which was "subject to review by the district court." See G. L. c. 32, § 16(4), second par. The town's appeal was thereupon dismissed.

Finally, the judge of the Superior Court, acting on the town's application for declaratory relief,[10] agreed with the reasoning of CRAB, and went on to consider whether declaratory relief under G. L. c. 231A could be granted when the sixty-day limitations period for a writ in the nature of certiorari (the appropriate procedural remedy — see *Georgetown, supra* at 273) had

---

[7]Section 16(4), second par., as appearing in St. 1987, c. 697, § 48, provides: "On matters other than those subject to review by the district court as provided in subdivision (3), . . . any person when aggrieved . . . may appeal to the contributory retirement appeal board . . . ." Subdivision (3) provides that any member aggrieved by his removal or discharge may bring a petition in the district court.

[8]The advice to appeal under G. L. c. 30A was also mistaken. As we noted in *Georgetown* v. *Essex County Retirement Bd.*, 29 Mass. App. Ct. 272, 273 n.2 (1990), a county retirement board is not an "agency" within the meaning of G. L. c. 30A, § 1(2).

[9]Counsel to the town suggest in their brief that they accepted the advice on the theory that an appeal to CRAB was the only place where the town "could have gone under *both* c. 30A and c. 32, § 16."

[10]The town also stated a claim under G. L. c. 30A, § 14 — the usual mode of review of decisions by CRAB. See *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 462 (1985). But since CRAB had no jurisdiction to hear the town's appeal, c. 30A review would gain the town nothing.

already expired. He decided that there were no special circumstances that would justify resort to c. 231A to reach a result prohibited by the limitations period stated in G. L. c. 249, § 4.

While we agree with CRAB and with the judge that CRAB had no jurisdiction to hear the town's appeal, we nevertheless conclude that there are "special circumstances of public import" which warrant relief under c. 231A. See *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 352-353 (1992), and cases cited. Most important is the fact that the mistake of the county board in advising the town of its rights of appeal "was inexplicable and serious." *MacDonald* v. *Commissioner of the Metropolitan Dist. Commn.*, 33 Mass. App. Ct. 455, 462 (1992) (State board of retirement gave mistaken advice to the plaintiff regarding his rights of appeal).[11] The town acted reasonably in relying on the board's advice, see *ibid.*, and the fact that the town's right to proceed appropriately by way of certiorari had in the meantime expired made the board's mistake decisively worse.

Second, there is here a risk of a miscarriage of justice in a matter involving the public interest. This is not a case involving a dispute between private parties; it involves a municipality seeking to adjudicate the rights of the town in an appropriate manner. Thus, "more persons than the parties to the case" will be affected by the outcome. *School Comm. of Franklin*, v. *Commissioner of Educ.*, 395 Mass. 800, 807 (1985), quoting from *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 450 (1973). Nor is it self-evident that Watkinson will prevail upon a careful review of the events in this case. It appears from the record that Watkinson's appointment may have expired without any renewal, and that he was not "removed or discharged" within the meaning of § 16(2), see *Costello* v. *School Comm. of Chelsea*, 27 Mass. App. Ct. 822, 824-827 (1989). Further, Watkinson withdrew his

---

[11]The court in *MacDonald* made no mention of the fact that the State board of retirement is an "agency," see G. L. c. 30A, § 1(2), and was bound by G. L. c. 30A, § 11(8), as inserted by St. 1954, c. 681, § 1, which provides that parties to an agency proceeding "shall be notified . . . of their rights to review or appeal the decision within the agency or before the courts . . . ." Even though the county board is not an "agency," see note 8, *supra*, the practice among administrative agencies to provide written notice of rights of appeal has become so pervasive — as this case illustrates — that the parties to litigation have come to expect such advice, and to rely on it.

total deductions, resigned his membership in the system, and surrendered all his rights and privileges as a member two years prior to seeking relief as a member under G. L. c. 32, § 16.

These events present genuine issues which the county board correctly identified as important to the adjudication of Watkinson's claim; they are worthy of careful analysis and thoughtful resolution. Yet the decision of the county board, inadequate on its face, has evaded all administrative and judicial review. These circumstances are sufficient to warrant the unusual relief that may and should be provided by proceedings for a declaratory judgment, notwithstanding the expiration of the limitations period for a writ of certiorari.[12]

Accordingly, the judgment for the defendant Watkinson is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[12]In *Bermant* v. *Selectmen of Belchertown*, 425 Mass. 400, 403 (1997), the Supreme Judicial Court held that a declaratory judgment "was not an alternate . . . remedy to a writ of certiorari to review the decision of a local licensing authority." Ordering the issuance of a license, the court said, "would amount to a usurpation by the court of the licensing power [of the licensing authority]." *Ibid.* In this case the licensing power of a local licensing authority is not at stake.